IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TERRI P. ELISBERG, SHIRLEY GARCIA,
LINDA GIVENS, SCOTT COHERNOUR, MARY
MARTINEZ, FRANK PACHECO, PATRICIA
TROYANOWSKI, JOSEPH RUIZ, and DAVE
PACHECO,

        Plaintiffs,

vs.                                                                 No. 05-CV-461 JCH/KBM

PRESBYTERIAN HEALTHCARE SERVICES,
INC., and ARAMARK MANAGEMENT
SERVICES, L.P.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Presbyterian Healthcare Services, Inc.'s ("Presbyterian") Motion for Summary Judgment as to All Claims of Plaintiffs Linda Givens and Mary Martinez, filed September 8, 2005 **[Doc. No. 38]**, and Defendant ARAMARK Management Services, L.P.'s ("ARAMARK") Motion for Summary Judgment as to All Claims of Plaintiffs Linda Givens and Mary Martinez, filed November 18, 2005 **[Doc. No. 61]**. The Court having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the motions are well taken in part and will be granted in part.

### BACKGROUND

Defendant Presbyterian entered into an Integrated Support Service Agreement with ServiceMaster Management Services Company, L.P. ("ServiceMaster") effective on or about September 1, 2000 ("Agreement"). Pursuant to this Agreement, ServiceMaster agreed to deliver certain integrated support services to Presbyterian. To deliver these services, the parties agreed

that ServiceMaster would supervise and manage certain Presbyterian employees, including Plaintiffs Givens and Martinez.

Defendant ARAMARK purchased ServiceMaster in October 2001. Effective April 7, 2003, Defendant Presbyterian amended its Integrated Support Service Agreement with ServiceMaster to change all references from ServiceMaster to ARAMARK/ServiceMaster ("Amended Agreement"). Pursuant to the Amended Agreement, Defendant ARAMARK assumed the responsibilities of ServiceMaster, including supervising and managing Plaintiffs Givens and Martinez.

The Agreement between ServiceMaster and Defendant Presbyterian provides that any employees of ServiceMaster and Presbyterian subject to the Agreement will continue as employees of their respective employers. The Agreement further provides that "Presbyterian Healthcare shall have the sole responsibility to hire, discipline and discharge its service employees." In addition, the Agreement indicates that ServiceMaster (or, with the Amended Agreement, ARAMARK) "shall not be regarded as a party to any collective bargaining agreement or agreements to which Presbyterian Healthcare was or becomes a party."

Plaintiff Givens, an employee of Defendant Presbyterian, resigned from her employment with Presbyterian in January 2003. On January 21, 2003, ARAMARK supervisor David Foster advised Plaintiff Givens that an area over which she exercised supervisory duties had been "put on notice" by the Department of Environmental Health. Plaintiff Givens suspected that Mr. Foster would seek to terminate her employment with Presbyterian. Mr. Foster, as well as another ARAMARK manager, informed Plaintiff Givens that there had to be "consequences" for the receipt of the notice. Mr. Foster "held out the possibility of [Plaintiff Givens] receiving some sort of severance benefit if [she] voluntarily resigned." Mr. Foster asked Plaintiff to prepare a written

statement indicating what she considered a fair severance pay.

Plaintiff Givens "felt [she] had no choice but to write the [statement]" requested by Mr. Foster.  Although Plaintiff Givens prepared a statement setting forth the amount of severance pay she deemed fair, Plaintiff did not receive the amount of severance pay she requested.  Rather, Plaintiff Givens received a lesser amount equivalent to four weeks salary.  Plaintiff Givens "had no opportunity to negotiate or discuss with anyone the amount of the severance."  Plaintiff Givens was specifically told that she "would receive no severance until [she] signed the [release]."

The release agreement provides that Plaintiff Givens releases all claims against "Presbyterian . . . and all entities in privity with them . . . related to or arising from [their] employment with or cessation of employment from Presbyterian, . . . including but not limited to claims asserted under the New Mexico Human Rights Act, Title VII of the Civil Rights Act, . . . the Americans with Disabilities Act (ADA), the Family Medical Leave Act (FMLA), the Employee Retirement Income Security Act (ERISA), and the Age Discrimination in Employment Act (ADEA)."

Plaintiff Givens had a sick husband at the time and no other job prospects.  If terminated, Plaintiff Givens was concerned that the termination would detrimentally affect her ability to find another job.  Plaintiff Givens was the only wage earner in her household.  Plaintiff Givens maintains that she did not voluntarily sign the release, "but, rather, only signed the [release] because of the poor health of [her] husband, the need for medical insurance, and [her] financial situation."

Plaintiff Martinez signed a similar release, with the same release language, on March 20, 2003.  Approximately two to three weeks prior to March 20, 2003, Mary Beth Easton, an ARAMARK supervisor, placed Plaintiff Martinez on disciplinary suspension.  On March 20,

2003, Betty Kurtz, a Human Resources manager for Presbyterian, called Plaintiff Martinez into her office and presented Plaintiff Martinez with a release agreement.  Prior to the meeting, Ms. Easton, Mr. Foster, and Ms. Kurtz had informed Plaintiff Martinez that she was going to be terminated.  At the March 20, 2003, meeting, Ms. Kurtz informed Plaintiff Martinez that she had two options:  involuntary termination or voluntary resignation.  Plaintiff Martinez asked Ms. Kurtz if Plaintiff would receive any money if she chose to resign.  Ms. Kurtz informed Plaintiff Martinez that "they could probably work something out."  At the meeting, Plaintiff Martinez expressed some doubts about signing the release agreement.  Ms. Kurtz "told [Plaintiff] that [she] could sign the Agreement and come back to work for PHS in twelve months."  Plaintiff Martinez also was told at the meeting that the possibility of resigning her employment was contingent upon her agreement to the release.

At the time Plaintiff Martinez signed the release, she did not have any savings or financial reserves she could rely upon to withstand an extended period of unemployment.  At no time prior to seeing the release agreement did Plaintiff Martinez request from any Presbyterian or ARAMARK employee a severance payment.  Plaintiff Martinez engaged in no discussions with Presbyterian or ARAMARK employees regarding a severance payment prior to the day Ms. Kurtz presented Plaintiff Martinez with the release agreement.

Plaintiff Martinez had no opportunity to negotiate or discuss the terms of the release agreement with any Presbyterian or ARAMARK employee.  Plaintiff Martinez "understood the [release a]greement represented a 'take it or leave it' proposition.  It was never discussed with [Plaintiff Martinez] whether the amount of severance or the terms of the [a]greement were acceptable."

Plaintiff Martinez "did not take the [a]greement to be reviewed by an attorney because

4

[she] believed Ms. Kurtz's statement that [she] could return to PHS in twelve months.  In addition, when [she] was presented with the [a]greement at the March 20th meeting, [Plaintiff Martinez] was required to sign it immediately."  Plaintiff Martinez had "no understanding of any of the rights and privileges [she] had under any of the laws and statutes listed [in] the [a]greement."  Plaintiff Martinez signed the agreement "in part[] because [she] feared that a termination on [her] employment record, after so many years with PHS, would severely damage any future employment opportunities [she] might have elsewhere."

## STANDARD

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997).  "'Instead, the movant only bears the initial burden of 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

5

issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo v. Neighborhood Health Centers, Inc.*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzsche v. Albuquerque Municipal Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## DISCUSSION

Defendant Presbyterian moves for summary judgment on the ground that Plaintiffs Givens and Martinez executed agreements releasing Presbyterian and those in privity with Presbyterian from all claims related to their employment with Presbyterian. Defendant ARAMARK argues that it is in privity of contract with Presbyterian and that Plaintiffs therefore have likewise released all claims against ARAMARK. Defendant Presbyterian also moves for summary judgment on its attorneys' fees counterclaim. In response, as a threshold matter, Plaintiffs object to the sole supporting affidavit attached to Defendants' Motion for Summary Judgment on the grounds that the affiant does not have personal knowledge of the events to which she attests. On the merits, Plaintiffs maintain that the Court should deny Defendant Presbyterian's Motion for Summary

6

Judgment because Plaintiffs did not voluntarily sign the releases. Plaintiffs further argue that the Court should deny Defendant ARAMARK's Motion for Summary Judgment because ARAMARK is not in privity of contract with Presbyterian.

I.      Validity of the Affidavit of Pamela Armbrecht.

Federal Rule of Civil Procedure 56(e) provides that affidavits supporting or opposing motions for summary judgments must be made on personal knowledge. Plaintiffs maintain, and Defendants do not contest, that Pamela Armbrecht does not have personal knowledge of the facts attested to in her affidavit. Accordingly, the Court strikes the affidavit and the documents attached thereto.

II.     Validity of the Releases Signed by Plaintiffs.

A.      Privity of Contract.

Defendant ARAMARK argues that it is entitled to summary judgment in its favor on Plaintiffs' claims the ground that Plaintiffs released their claims against ARAMARK when they executed the release agreements given to them by Presbyterian. ARAMARK maintains that pursuant to the Integrated Support Service Agreement (made applicable to ARAMARK by virtue of the Amended Agreement), ARAMARK is in privity of contract with Defendant Presbyterian, and therefore, as a party in privity with Presbyterian, that ARAMARK is subject to the benefits of the releases.

The Integrated Support Service Agreement authorizes Defendant ARAMARK to supervise and manage the integrated support service using employees of Defendant Presbyterian, including Plaintiffs Givens and Martinez. The Agreement also provides that employees of Defendant Presbyterian shall remain employees of Presbyterian. The Agreement further provides that "Presbyterian Healthcare shall have the sole responsibility to hire, discipline and discharge its

7

service employees."  In addition, the Agreement states that ServiceMaster (and ARAMARK, under the Amended Agreement) "shall not be regarded as a party to any collective bargaining agreement or agreements to which Presbyterian Healthcare was or becomes a party."

The Agreement specifically limits any role that Defendant ARAMARK, as successor to ServiceMaster, might play in supervising and managing Plaintiffs Givens and Martinez.  The Agreement precludes Defendant ARAMARK, as successor, from playing any role in the discharge of Plaintiffs Givens and Martinez.  As such, Plaintiffs Givens and Martinez argue that ARAMARK cannot be in privity with Presbyterian.

The Court disagrees.  Defendants Presbyterian and ARAMARK are in privity of contract by virtue of the Integrated Support Service Agreement.  The Agreement requires ARAMARK to supervise and manage Plaintiffs Givens and Martinez.  Although Defendant Presbyterian has the sole responsibility to discipline and discharge Plaintiffs, by virtue of the Agreement itself, ARAMARK is in privity of contract with Presbyterian.  Moreover, the Agreement authorizes ARAMARK to supervise and manage Plaintiffs Givens and Martinez, and the supervision and management language in the Agreement is sufficiently broad to encompass recommendations regarding employee performance, discipline, and discharge, and the sole responsibility language does not preclude ARAMARK from making recommendations regarding discipline and discharge.  The Court therefore is not persuaded by Plaintiffs' argument that because Presbyterian has sole responsibility to discharge and discipline its employees under the Agreement, ARAMARK is not as a matter of law in privity of contract with Presbyterian and therefore not as a matter of law released.

Because the Integrated Support Service Agreement does not automatically preclude ARAMARK from the receiving the benefits of the releases, the Court must determine whether,

8

under the language of the release agreements, Plaintiffs have released ARAMARK from their claims. The release agreements provide that Plaintiffs release all claims against "Presbyterian . . . and all entities in privity with them . . . related to or arising from [their] employment with or cessation of employment from Presbyterian, . . . including but not limited to claims asserted under the New Mexico Human Rights Act, Title VII of the Civil Rights Act, . . . the Americans with Disabilities Act (ADA), the Family Medical Leave Act (FMLA), the Employee Retirement Income Security Act (ERISA), and the Age Discrimination in Employment Act (ADEA)." This release language is sufficiently broad to release ARAMARK from Plaintiffs' claims. Accordingly, the Court concludes that if the releases preclude Plaintiffs' claims against Presbyterian, they preclude Plaintiffs' claims against ARAMARK.[1]

B.   Validity of Releases.

Although Plaintiffs challenge the validity of the Armbrecht affidavit, Plaintiffs do not oppose Presbyterian's Motion for Summary Judgment on the ground that Presbyterian failed to satisfy it initial summary judgment burden, *i.e.*, that Presbyterian failed to show that there is an absence of evidence to support the Plaintiffs' case. Rather, Plaintiffs argue that the releases signed by Plaintiffs were not voluntary and that the Court therefore should deny Defendants' Motions for Summary Judgment.

Federal employment discrimination claims may be waived by agreement, but the waiver of

---

[1] The Court so rules without considering Plaintiffs' Supplemental Response to ARAMARK's Motion for Summary Judgment as to All Claims of Linda Givens and Mary Martinez. Defendant ARAMARK objects to the Supplemental Response on the ground that the response is not authorized by this Court's rules. The Court agrees and therefore does not consider the response or attachments thereto. The Court also notes that the legal conclusion of any witness regarding the existence of privity between Defendants Presbyterian and ARAMARK, including a Presbyterian or ARAMARK employee, is not determinative of, or relevant to, the Court's determination of whether privity exists.

such claims must be knowing and voluntary. *Torrez v. Public Service Co.*, 908 F.2d 687, 689 (10th Cir. 1990) (citations omitted). Waivers of federal remedial rights, however, are not lightly to be inferred. *Id.* (citation omitted). Although in considering whether a general release was knowing and voluntary, some circuits purport to apply ordinary contract principles and focus primarily on the clarity of language in the release, *see Pilon v. University of Minn.*, 710 F.2d 466 (8th Cir. 1983), the majority of circuits, including the Tenth Circuit, explicitly look beyond the contract language and consider all relevant factors in assessing a plaintiff's knowledge and the voluntariness of the waiver. *Torrez*, 908 F.2d at 689 (citations omitted).

Specifically, the Tenth Circuit, in *Torrez v. Public Service Co.*, 908 F.2d 687 (10th Cir. 1990), considered the following circumstances and conditions under which the release was signed:

> "(1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law."

*Torrez*, 908 F.2d at 689-90 (quoting *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1998)).

        1.    <u>Plaintiff Givens</u>.

In response to Defendants' Motions for Summary Judgment, Plaintiff Givens argues that she did not knowingly and voluntarily sign the release. The Court concludes, however, that Plaintiff Givens failed to point to specific facts indicating that a genuine issue exists for trial on the question of the validity of the release and failed to demonstrate that Defendants are not entitled to

10

judgment in their favor as a matter of law.

First, Plaintiff Givens presented no evidence that the language of the release was unclear or ambiguous.[2] *See Celotex*, 477 U.S. at 324 (the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'") (quoting Fed. R. Civ. P. 56(e)); *see also Pierce v. The Atchison Topeka, Santa Fe Ry.*, 110 F.3d 431, 438 (7th Cir. 1997) (placing the burden of proof on employer but burden of production on employee to "come forward with specific evidence sufficient to raise a question as to the validity of the release under the totality approach"); *accord Reed v. Bennett*, 244 F. Supp. 2d 1205, 1211 (D. Kan. 2003) (quoting same language from *Pierce*); *Poppelreiter v. Straub Int'l*, No. 99-4122-SAC, 2001 U.S. Dist. LEXIS 18885, *13 (D. Kan. 2001) (same). Accordingly, Plaintiff Givens failed to satisfy her summary judgment burden with respect to this factor.

Second, Plaintiff Givens has presented no evidence that her education or business experience would render her acceptance of the release involuntary or unknowing.[3] *See Pierce*,

---

[2] To the contrary, a review of the release language indicates that the release was in fact clear and unambiguous, and that the release specifically included claims asserted under the New Mexico Human Rights Act, the Age Discrimination in Employment Act, and the Employee Retirement Income Security Act. *Cf. Reed*, 244 F. Supp. 2d at 1211 (language clear and simple where agreement indicated that plaintiff releases "any and all claims" further specified that plaintiff waives claims under the Americans with Disabilities Act and state discrimination and wrongful discharge law); *compare Torrez*, 908 F.2d at 689-90 (factor weighed in employee's favor where release did not specifically mention release of employment discrimination claims). The Court, however, has struck the releases and therefore does not consider this language with respect to Presbyterian's motion.

[3] In fact, the evidence (struck by this Court, and therefore not considered) indicates that Plaintiff Givens received a bachelor degree from the University of New Mexico, that she obtained a dietary manager's certificate, and that she has had almost twenty-five years of experience as a hospitality site manager and as a food a nutrition director, manager, and supervisor. *Cf. Reed*, 244 F. Supp. 2d at 211 (factor weighed in favor of employer where plaintiff attended community

110 F.3d at 438.  Plaintiff therefore has not set forth specific evidence sufficient to raise a factual question as to this factor.

Third, Plaintiff Givens did not come forward with evidence indicating that she had insufficient time for deliberation prior to signing the release.  *Compare Poppelreiter*, 2001 U.S. Dist. LEXIS 18885, at *15-16 (factor weighed slightly in plaintiff's favor where defense counsel initially refused to provide plaintiff with a copy of the release but later allowed plaintiff to review a copy of the release prior to signing it); *Reed*, 244 F. Supp. 2d at 1212 (factor weighed in employer's favor where plaintiff was allowed thirty days to consider the agreement); *White v. Gen. Motors Corp.*, 908 F.2d 669, 672 (10th Cir. 1990) (fourteen days to consider agreement presumptively reasonable).  Plaintiff Givens simply states, "I was specifically told that I would receive no severance until and unless I signed the [release]."  Plaintiff Givens failed to point to any specific facts relevant to this factor, and therefore has not raised a genuine factual dispute.

Fourth, Plaintiff Givens has presented no evidence to indicate that she did not know, and should not have known, her rights upon execution of the release.  Plaintiff Givens does not argue that she did not understand the rights that she was waiving.  *Cf. Poppelreiter*, 2001 U.S. Dist. LEXIS 18885, at *16 ("'A release is more likely to be knowing and voluntary if the employee understood the rights being waived'") (quoting *Riddell v. Medical Inter-Ins. Exchange*, 18 F. Supp. 2d 468, 473 (D.N.J. 1998)); *id.* (factor weighed in employee's favor where employee stated, "'Had I believed that I was waiving anything other than the loss of the 1 ½ months wages, I would not have signed the Waiver.  I would not have signed the same but for the assurance by Straub's lawyer that this did not keep me from having the right to sue for other damages under

---

college and anticipated graduating from the college); *compare Torrez*, 908 F.2d at 689-90 (factor weighed in employee's favor where employee had a high-school education).

the FMLA and on my EEOC ADA claim.'"); *Torrez*, 908 F.2d at 689-90 (factor weighed in employee's favor where employee testified he viewed the release as releasing only those claims arising out of the termination plan). Rather, Plaintiff Givens simply claims that she felt like she had to sign the release "because of the poor health of [her] husband, the need for medical insurance, and [her] financial situation." She also maintains that she "was specifically told that [she] would receive no severance until and unless [she] signed the [release]."

Plaintiff argues that this situation is like the situation in *Torrez*, where the employee was forced to choose between nearly-certain layoff with no retirement benefits or obtaining the future retirement benefits available only if he signed the release. *Torrez*, however, is distinguishable because the plaintiff there was forced to sign a waiver or give up already-accrued retirement benefits. Here, Plaintiff Givens was given the choice between (1) receiving additional compensation, to which she was not entitled under law or had not accrued by virtue of her past employment, and signing a release, and (2) refusing to sign the release and not receiving the additional severance pay. If the Court were to declare Plaintiff Givens's choice to be analogous to the "Hobson's choice" in *Torrez*, the Court would essentially be declaring all agreements in which one gives up rights to sue in exchange for a cash settlement coercive, and therefore subject to challenge.[4] Because the Court is not prepared to so hold, the Court concludes that even on the

---

[4] In her opposition to the Motion for Summary Judgment, Plaintiff Givens also argues that she faced a second "Hobson's choice": (1) choosing between voluntary separation and a release or (2) being involuntarily terminated. The Court notes first that the facts do not indicate that Plaintiff was told she could not voluntarily resign unless and until she signed the release. Rather, Plaintiff states only that she was "specifically told that [she] would receive no *severance* until and unless [she] signed the [release]." (Emphasis added). The Court also notes that if the Court were to declare these alleged "Hobson's choices" coercive as a matter of law, the Court would essentially be declaring a multitude of agreements invalid. For example, all agreements in which plaintiffs agree to settle and release claims in exchange for cash payments would be coercive.

13

facts set forth by Plaintiff Givens, Plaintiff Givens has failed to establish as a matter of law that this factor weighs in her favor.

Fifth, Plaintiff Givens has presented evidence that she did not have counsel. In her affidavit, Plaintiff Givens claims, "I had no opportunity to negotiate or discuss with anyone the amount of the severance." Plaintiff, however, has presented no evidence that Defendant Presbyterian discouraged her from obtaining counsel. Defendant Presbyterian likewise submits no evidence indicating that Plaintiff was encouraged to obtain, or not discouraged from obtaining, counsel. Therefore, on balance, on the facts set forth by Plaintiff, this factor weighs in favor of Plaintiff Givens. *Cf. id.* (factor weighed in favor of employee where employee did not have counsel).

Sixth, Plaintiff Givens states in her affidavit that she "had no opportunity to negotiate or discuss with anyone the amount of the severance," and that she was "specifically told that [she] would receive no severance until and unless [she] signed the [release]." Although Plaintiff Givens admits that Defendant Presbyterian requested that she inform Presbyterian what she considered to be a fair severance, and that, in a January 22, 2003, correspondence to Defendant Presbyterian, Plaintiff informed Defendant of the amount of her desired severance pay, Plaintiff further states that she was given a lesser amount of severance pay and that she was not allowed any further opportunity to negotiate the severance pay. Defendant Presbyterian sets forth no evidence indicating that Plaintiff had an opportunity to negotiate. The Court therefore concludes that, on balance, this factor weighs in favor of Plaintiff Givens. *Cf. id.* (factor weighed in favor of employee where employee did not have an opportunity to negotiate the terms of the release).

Seventh, Plaintiff Givens has presented no evidence that the consideration given in exchange for the waiver and accepted by Plaintiff was less generous than the benefits to which

14

Plaintiff already was entitled by contract or law. Accordingly, Plaintiff Martinez has not raised a factual question with respect to this factor.

In response to Defendants' Motions for Summary Judgment on the ground that Plaintiff Givens's claims are barred by the release, Plaintiff has not pointed to specific facts that indicate a genuine issue of material fact with respect to whether the release is valid.[5] Plaintiff Givens has only pointed to evidence indicating that two of the seven factors weigh in her favor. The Court concludes, as a matter of law, that even with those two factors weighing in favor of invalidity, under the totality of circumstances these two factors are not sufficient to render the agreement involuntary under the totality of the circumstances. Accordingly, the Court grants Defendants' Motions for Summary Judgment on Plaintiff Givens's claims.

       2.    <u>Plaintiff Martinez</u>.

Plaintiff Martinez likewise argues that she did not knowingly and voluntarily sign the release. Unlike Plaintiff Givens' claim, however, Plaintiff Martinez has raised sufficient facts to demonstrate a genuine question of material fact whether the *Torrez* factors weigh in favor of finding the release involuntary.

Although Plaintiff Martinez has not demonstrated that a factual question exists with respect to whether the first, second, and seventh factors weigh in her favor,[6] Plaintiff Martinez has

---

[5] Plaintiffs' argument that the admission of a Presbyterian Human Resources Manager that "an employee who resigns in lieu of termination does not resign voluntarily" does not assist Plaintiffs in raising a genuine factual question regarding the totality of the circumstances surrounding the signing of the releases. The legal conclusion of any witness, including a Presbyterian employee, does not and cannot raise a factual question.

[6] Like Plaintiff Givens, Plaintiff Martinez has not demonstrated that a factual question exists with respect to the clarity of the release language, Plaintiff Martinez's educational background and experience, and the extent of the compensation in comparison to rights under law because Plaintiff Martinez failed to set forth any evidence relevant to these factors.

demonstrated that a material factual question exists with respect to whether the four remaining factors weigh in her favor.  Accordingly, Defendants Presbyterian and ARAMARK are not entitled to summary judgment in their favor on Plaintiff Martinez's claims.

Specifically, with respect to the third *Torrez* factor, Plaintiff Martinez has come forward with evidence that raises a factual question with respect to whether she had sufficient time for deliberation prior to signing the release.  Plaintiff Martinez states, "[W]hen I was presented with the Agreement at the March 20th meeting, I was required to sign it immediately."  Plaintiff Martinez further indicates that she did not see the agreement prior to the March 20th meeting and that she did not raise the issue of severance or discuss the issue of severance prior to the March 20th meeting.  Plaintiff Martinez also states that "after [she] expressed some doubts about signing the Agreement at the March 20th meeting, Ms. Kurtz[, a human resources manager for Defendant Presbyterian,] told [her] that [she] could sign the Agreement and come back to work for PHS in twelve months."  Plaintiff Martinez indicates that she did not take the Agreement to be reviewed by an attorney because she "believed Ms. Kurtz's statement that [she] could return to PHS in twelve months."  These facts raise a genuine factual question whether Plaintiff Martinez had sufficient time for deliberation prior to signing the release.

With respect to the fourth *Torrez* factor, Plaintiff Givens has presented evidence that raises a factual question with respect to whether she did not know, or should not have known, her rights upon execution of the release.  Plaintiff Martinez states in her affidavit, "I do not know and have no understanding of any of the rights and privileges I had under any of the laws and statutes listed on page 2 of the Agreement."  *Cf. Poppelreiter*, 2001 U.S. Dist. LEXIS 18885, at *16 ("'A release is more likely to be knowing and voluntary if the employee understood the rights being waived'") (quoting *Riddell*, 18 F. Supp. 2d at 473).  Plaintiff Martinez further states that she

16

believed Ms. Kurtz's statement that Plaintiff Martinez could return to Presbyterian in twelve months. Plaintiff Martinez has raised a factual question whether her lack of knowledge of the rights she was waiving and whether Ms. Kurtz's statement implying Plaintiff could *return* to work (and not just *apply* to return to work) rendered Plaintiff's understanding of her rights not knowing.

With respect to the fifth *Torrez* factor, Plaintiff Martinez has presented evidence that she did not receive counsel. In addition, Plaintiff Martinez has set forth evidence that raises a factual question with respect to whether Defendant Presbyterian discouraged Plaintiff from receiving counsel. Specifically, in her affidavit, Plaintiff Martinez states, "I did not take the Agreement to be reviewed by an attorney because I believed Ms. Kurtz's statement that I could return to PHS in twelve months," and that "after I expressed some doubts about signing the Agreement . . . , Ms. Kurtz told me that I could sign the Agreement and come back to work for PHS in twelve months." Plaintiff Martinez did not have counsel, which indicates that this factor may weigh in Plaintiff's favor. *Cf. Torrez*, 908 F.2d 689-90 (factor weighed in favor of employee where employee did not have counsel). The latter statement also raises a factual question with respect to whether Defendant Presbyterian, through its employee Ms. Kurtz, discouraged Plaintiff from obtaining counsel.

With respect to the sixth *Torrez* factor, Plaintiff Martinez states in her affidavit, "I had no opportunity to negotiate or discuss the terms of the Agreement with any PHS or ARAMARK employee. I understood the Agreement represented a 'take it or leave it' proposition. It was never discussed with me whether the amount of severance or the terms of the Agreement were acceptable." Plaintiff Martinez has raised a factual question whether this factor weighs in her favor. *Cf. id.* (factor weighed in favor of employee where employee did not have an opportunity

17

to negotiate the terms of the release).

Plaintiff Martinez has raised a factual question whether four of the seven *Torrez* factors weighs in her favor.  Construing the facts in Plaintiff Martinez's favor, as the Court must in reviewing a motion for summary judgment, the Court finds that Plaintiff Martinez has demonstrated that Defendants Presbyterian and ARAMARK are not entitled to judgment in their favor as a matter of law.  Accordingly, the Court denies Defendants' Motions for Summary Judgment on Plaintiff Martinez's claims.

III.    Attorneys' Fees.

Defendant Presbyterian moves for summary judgment on its attorneys' fees counterclaim. Defendant Presbyterian maintains that the release agreements signed by Plaintiffs Givens and Martinez contain provisions allowing a party who must sue to enforce the releases to recover from the other party all costs and attorneys' fees incurred in enforcing the releases.  The Court, however, has struck the affidavit of Pamela Armbrecht, and the attachments to the affidavit. Included in those attachments were the releases containing the alleged attorneys' fees provisions. Because Defendant Presbyterian has not satisfied its initial summary judgment burden, the Court denies Defendant Presbyterian's Motion for Summary Judgment on its attorneys' fees counterclaim.

## CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that Defendant Presbyterian Healthcare Services, Inc.'s Motion for Summary Judgment as to All Claims of Plaintiffs Linda Givens and Mary Martinez will be GRANTED in part as follows:

(1)    Defendant Presbyterian's Motion for Summary Judgment as to Plaintiff Givens's claims is GRANTED;

(2)  Defendant Presbyterian's Motion for Summary Judgment as to Plaintiff Martinez's claims is DENIED; and

(3)  Defendant Presbyterian's Motion for Summary Judgment on its attorneys' fees claims is DENIED.

**IT FURTHER IS ORDERED** that Defendant ARAMARK Management Services, L.P.'s Motion for Summary Judgment as to All Claims of Plaintiffs Linda Givens and Mary Martinez will be GRANTED in part as follows:

(1)  Defendant ARAMARK's Motion for Summary Judgment as to Plaintiff Givens's claims is GRANTED; and

(2)  Defendant ARAMARK's Motion for Summary Judgment as to Plaintiff Martinez's claims is DENIED.

Dated this 10th day of August 2006.

_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE