IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TERRI P. ELISBERG, SHIRLEY GARCIA,
LINDA GIVENS, SCOTT COHERNOUR, MARY
MARTINEZ, FRANK PACHECO, PATRICIA
TROYANOWSKI, JOSEPH RUIZ, and DAVE
PACHECO,

       Plaintiffs,

vs.                                                                                                    No. 05-CV-461 JCH/KBM

PRESBYTERIAN HEALTHCARE SERVICES,
INC., and ARAMARK MANAGEMENT
SERVICES, L.P.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Presbyterian Healthcare Services, Inc.'s ("Presbyterian") Motion for Summary Judgment on Conspiracy Claim (Count VIII of the Complaint), filed May 3, 2006 **[Doc. No. 112]**, and Defendant ARAMARK Management Services, L.P.'s ("ARAMARK") Motion for Summary Judgment, filed May 8, 2006 **[Doc. No. 117]**. The Court having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the Defendant Presbyterian's motion is not well taken and will be denied, and that Defendant ARAMARK's motion is well taken in part and will be granted in part.

### STANDARD

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997). "'Instead, the movant only bears the initial burden of 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo v. Neighborhood Health Centers, Inc.*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzsche v. Albuquerque Municipal Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law.

*See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## DISCUSSION

I.Tortious Interference with Contract.

The tort of interference with existing contractual relations requires proof of: (1) a contractual relationship; (2) defendant's knowledge of the contractual relationship; (3) intentional and improper interference with the contractual relationship, which means either (a) improper motive solely to harm plaintiff, or (b) an improper means; and, (4) pecuniary harm caused by the interference with the contractual relationship. *Leyba v. Renger*, 874 F. Supp. 1218, 1225 (D.N.M. 1994) (citing *Dough v. Adventist Health Systems, Inc.*, 108 N.M. 801, 806, 780 P.2d 627 (1989)).

Defendant ARAMARK moves for summary judgment on Plaintiffs' tortious interference claims on the ground that Plaintiffs cannot establish the third requirement of improper interference with a contractual relationship as a matter of law. To evaluate the improper interference element, New Mexico courts employ a burden-shifting approach. Under this approach, Plaintiffs have the initial burden of coming forward with evidence that Defendant ARAMARK had an improper motive or used an improper means in interfering with their contractual relationships. *M & M Rental Tools v. Milchem, Inc.*, 94 N.M. 449, 455, 612 P.2d 241, 247 (N.M. Ct. App. 1980). "Once such evidence has been introduced, [D]efendant [ARAMARK] has the burden of proving any privilege relied on. The means used by [ARAMARK], to be proved by [P]laintiffs, is evidence to be considered on the question of whether an asserted privilege is applicable." *Id.*

In opposition to Defendant's motion for summary judgment, Plaintiffs allege that Defendant ARAMARK interfered with their contractual relationship with Presbyterian with both an improper motive and by improper means.

3

The Court must first determine whether the evidence construed in Plaintiffs' favor demonstrates that Defendant ARAMARK interfered with Plaintiffs' contractual relationships with Presbyterian. Plaintiffs have presented evidence that ARAMARK employees disciplined Plaintiffs on a number of occasions, that ARAMARK managers affected and made decisions concerning the terms and conditions of the employment of Plaintiffs Martinez, Troyanowski, and Elisberg, that ARAMARK effectuated the termination of Dave Pacheco in violation of Presbyterian's policies and procedures, that only ARAMARK employees were present when Frank Pacheco was terminated, and that an ARAMARK employee terminated Scott Cohernour. These facts are sufficient to create a triable question with respect to whether Defendant ARAMARK interfered with Plaintiffs' contractual relationship with Presbyterian.

The Court next must determine, on the facts construed in Plaintiffs' favor, whether Defendant ARAMARK *improperly* interfered with the contractual relationships by improper motive or improper means. New Mexico courts define improper motive as intent to harm the plaintiff, *M & M Rental Tools*, 94 N.M. at 453, 612 P.2d at 245; *Fikes v. Furst*, 134 N.M. 602, 609, 81 P.2d 545, 552 (N.M. 2003).[1] Courts have expanded upon the definition of improper motive, explaining that "[t]he improper motive required is actual malice--'a spiteful, malignant purpose, unrelated to the legitimate corporate interest.'" *Lassiter v. Melrose Sch. Dep't*, No. 98-442, 1999 Mass. Super. LEXIS 91, at *9-10 (Mass. Super. Ct. Mar. 4, 1999) (quoting *King v. Driscoll*, 418 Mass. 576, 587 (Mass. 1994)). One court, in defining "improper motive,"

---

[1] Because the Court has concluded that a material question of fact exists with respect to whether an implied contract exists providing Plaintiffs with protection beyond an employment at-will relationship, the Court will apply the improper motive test applicable to an existing contractual relationship. If the parties agreed that their employment relationship was at-will, the proper test for improper motive would be a motive solely to harm the Plaintiffs, as opposed to a motive to harm the Plaintiffs. *See Fikes*, 134 N.M. at 609, 81 P.2d at 552.

4

explained, "If the defendant's motive for interfering with the plaintiff's contract was to hurt the plaintiff because of his hatred or ill will toward him, or to discriminate against him because of his race, age, sex, religion or national origin, his interference would be improper within the meaning of the law." *Rubin v. Household Commercial Fin. Servs.*, No. 93-1544, 1996 Mass. Super. LEXIS 513, at *38(Mass. Super. Ct. Apr. 30, 1996).

Here, Plaintiffs have set forth facts sufficient to raise a question with respect to whether Defendant ARAMARK's motive was proper. Plaintiffs have pointed to testimony from Bob Hudson, ARAMARK's on-site lead manager at Presbyterian, that the Integrated Support Service Agreement was terminated because of financial reasons, that Presbyterian expected ARAMARK to streamline costs by deleting positions, and that fringe benefits affected the baseline amounts of the Agreement because of the associated costs. Plaintiffs argue that fringe benefits are more costly for older employees, and Plaintiffs have set forth evidence that Defendants terminated and/or encouraged older employees to resign from their Presbyterian employment. For example, Plaintiffs presented evidence that (1) Dave Pacheco had been an employee with Presbyterian for 27 years when Presbyterian terminated him, (2) that Frank Pacheco had been an employee with Presbyterian for 25 years when Presbyterian terminated him, and that, with the exception of three disciplinary actions during the last four months of his employment that led to his termination, Frank Pacheco had received no disciplinary actions during his 25-year tenure with Presbyterian, (3) that Mary Martinez had been employed by Presbyterian for more than twenty years when she was forced to resign or be terminated from her employment, (4) that Linda Givens had been an employee of Presbyterian for approximately 25 years when she was forced to resign or be terminated from her employment, and (5) that Terri Elisberg had been employed by Presbyterian for 28 years when she resigned, based upon "bad treatment" from ARAMARK management,

5

ARAMARK's decisions with respect to the terms and conditions of her employment, and lack of support from ARAMARK personnel. The Court concludes that Plaintiffs have raised a material factual question with respect to whether Defendant ARAMARK acted with an improper motive.

The Court also concludes that Plaintiffs have raised a factual question with respect to whether ARAMARK interfered with their contractual relationships with Presbyterian using improper means. New Mexico courts have indicated that improper means includes both tortious and predatory behavior with the latter defined as being "wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession." *Diversey Corp. v. Chem-Source Corp.*, 125 N.M. 748, 755, 965 P.2d 332, 339 (N.M. Ct. App. 1998) (internal quotation marks and citations omitted). Examples of improper means include but are not limited to "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." *M & M Rental*, 94 N.M. at 454, 612 P.2d at 246 (internal quotation marks and citation omitted).

Plaintiffs have presented evidence, as described above, from which a reasonable jury could conclude that Defendant ARAMARK interfered with Plaintiffs' contractual employment relationship with Presbyterian by targeting more senior employees for termination to accomplish cost savings contrary to the New Mexico Human Rights Act. This evidence is sufficient to raise a factual question with respect to whether Defendant ARAMARK acted by improper means.

The Court also concludes that Defendant ARAMARK has not demonstrated that it is entitled to judgment as a matter of law in its favor on the ground that it was privileged or justified in acting as it did by virtue of the Integrated Support Service Agreement. Plaintiffs maintain that under the Integrated Support Service Agreement Defendant ARAMARK was not entitled to discipline or terminate Plaintiffs or affect the terms and conditions of Plaintiffs' employment with

6

Presbyterian. Defendant ARAMARK maintains, pursuant to the Agreement, that it was privileged and justified in its actions by virtue of the Agreements' delegation of management and administrative actions to ARAMARK.

The Court already has held that Defendant ARAMARK's recommendations regarding employee performance, discipline, and discharge fell within the scope of the Agreement, and that the language indicating Presbyterian shall have sole authority to discipline and terminate employees did not preclude ARAMARK from making recommendations regarding discipline and discharge. However, although ARAMARK's recommendations regarding the discipline or termination of Plaintiffs, or the wages and conditions of employment of Plaintiffs may have been privileged under the Agreement, not all of their actions necessarily were privileged. The Agreement, for example, does not authorize ARAMARK to make recommendations based upon an improper motive or by improper means. Accordingly, the Agreement cannot insulate Defendant ARAMARK as a matter of law from Plaintiffs' tortious interference claims where Plaintiffs have pointed to specific facts raising an issue for trial on the question whether Defendant ARAMARK acted with improper motive or by improper means.

Because Plaintiffs have raised a factual question whether Defendant ARAMARK improperly interfered with Plaintiffs' contractual relationship with Presbyterian, and because Defendant ARAMARK has not demonstrated that its actions were privileged or justified, the Court denies Defendant ARAMARK's motion for summary judgment on Plaintiffs' tortious interference claims.

II.     Civil Conspiracy.

Defendants Presbyterian and ARAMARK move for summary judgment on Plaintiffs' conspiracy claims on the ground that ARAMARK and Presbyterian are not separate entities, but rather stand in a principal-agent relationship and that they therefore cannot conspire with one another as a matter of law.  In New Mexico, a civil conspiracy consists of a "combination of . . . two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  *EEOC v. MTS Corp.*, 937 F. Supp. 1503, 1513-14 (D.N.M. 1996) (internal quotation marks and citation omitted).  A civil conspiracy does not exist as a matter of law where a plaintiff employee alleges that a corporation's officers and shareholders conspired with the corporation, because an agent or employee of a corporation and the corporation itself are a single entity.  *Id.* at 1513 n.3 ("Agents and employees of a corporation cannot conspire with their corporate principal . . . where they act in their official capacities on behalf of the corporation and not as individuals.") (citation omitted); *see also* 16 Am. Jur. 2d *Conspiracy* § 56, at 281-82 ("Since a corporate entity cannot conspire with itself a civil conspiracy is not legally possible where a corporation and its alleged coconspirators are not separate entities, but, rather stand in either a principal-agent or employer-employee relationship with the corporation.").

Plaintiffs argue that Defendants' motion must fail because language in the Integrated Support Service Agreement defines ARAMARK as an independent contractor and not as an agent.  Plaintiffs' argument misses the mark.  First, language defining ARAMARK as an independent contractor does not render ARAMARK a non-agent.  An "independent contractor" is not antithetical to an "agent."  Restatement (Second) of Agency § 2, cmt. a; *see also Harger v. Structural Servs.*, 121 N.M. 657, 915 P.2d 1324 (N.M. 1996) (noting that an independent contractor "'may or may not be an agent'" (quoting Restatement (Second) of Agency § 2).  "In

8

fact, most of the persons known as agents, that is, brokers, factors, attorneys, collection agencies, and selling agencies are independent contractors, since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the services."[2] *Id.* Accordingly, ARAMARK could be both Presbyterian's agent and independent contractor. Second, the designation of "independent contractor" set forth in the Agreement is not controlling. It is the nature of a relationship, and not the parties' designation of a relationship, that is controlling. *See, e.g.*, *Chevron Oil Co. v. Sutton*, 85 N.M. 679, 681, 515 P.2d 1283, 1285 ("the majority rule is that the manner in which the parties designate a relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of the other, notwithstanding he is not so called") (citations omitted); *Carlsberg Management Co. v. State*, 116 N.M. 247, 251, 861 P.2d 288, 292 (N.M. Ct. App. 1993) ("[e]ven though the Agreements designate an 'agent' and a 'principal,' that designation alone is not controlling") (citations omitted).

The relevant question, therefore, is, considering the nature of the relationship, whether ARAMARK is Presbyterian's agent, and not whether ARAMARK is Presbyterian's independent contractor. New Mexico courts have explained, "An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation." *Tercero v. Roman Catholic Diocese*, 132 N.M. 312, 317, 48 P.3d 50, 55 (N.M.

---

[2] A right to control one's physical conduct would render one a servant, or an employee, of a master, or employer, and not an independent contractor. Restatement (Second) of Agency §§ 2, 14N.

9

2002) (quoting UJI 13-401 NMRA 2002).  An agency relationship is further defined as a relationship in which "[a] principal has the right to control the conduct of the agent with respect to matters entrusted to [the agent]."  Restatement (Second) of Agency § 14.  "An agent or apparent agent [also] holds a power to alter the legal relations between the principal and third persons and between the principal and him [or her]self."  *Id.* § 12.  In addition, "An agent is a fiduciary with respect to matters within the scope of his [or her] agency."  *Id.* § 13.  The authority of an agent may be actual or apparent.  *Tercero*, 132 N.M. 317, 48 P.3d at 55.  Whether an agency relationship exists is a question of fact to be determined from the circumstances of each case.  *Id.* at 318, 48 P.3d at 56 (citing *Brown v. Cooley*, 56 N.M. 630, 635, 247 P.2d 868, 871 (1952)).  Where the material facts are undisputed and susceptible of but one logical inference, however, the existence of such a relationship becomes a conclusion of law.  *Robertson v. Carmel Builders Real Estate*, 135 N.M. 641, 648, 92 P.3d 653, 660 (N.M. Ct. App. 2003) (citing *Madsen v. Scott*, 128 N.M. 255, 992 P.2d 268 (N.M. 1999)).

The Court concludes that Defendants are not entitled to judgment in their favor as a matter of law because Plaintiffs have demonstrated that a material question of fact exists with respect to whether ARAMARK was Presbyterian's agent.  Specifically, based upon the facts before the Court construed in Plaintiffs' favor, a reasonable juror could determine that Presbyterian did not have the right to control the conduct of ARAMARK with respect to the matters entrusted to ARAMARK under the Integrated Support Service Agreement.

The Agreement entrusts ARAMARK with, among other things, the "supervis[ion] and manage[ment] the Integrated Support Service."  A reasonable juror could conclude that the Agreement does not indicate that Presbyterian has the right to control ARAMARK's supervision or management of the support service.  For example, no language in the Agreement grants

10

Presbyterian the right to control ARAMARK's supervision and management of Presbyterian employees. In addition, the Agreement specifically provides that ARAMARK and Presbyterian shall have "mutual determination of supplies and equipment," including "who shall provide all supplies, food items, material[s], repair[] parts, purchased services, equipment and utilities which are needed to perform the Integrated Support Service program." Moreover, the Agreement indicates that Presbyterian and ARAMARK will establish a joint advisory team to monitor the Integrated Support Service, and that the team will consist of nine members: four members designated by Presbyterian, four members designated by ARAMARK, and one member designated by Presbyterian's third-party vendor. The Agreement further provides that ARAMARK shall provide and maintain all necessary equipment, manuals, and other materials used to train service employees, and provides no limitations or oversight with respect to ARAMARK's choices regarding employee training. The Agreement also establishes a five year initial term, with automatic renewal for consecutive terms of five years after the expiration of the initial term, and termination only upon three-month notice prior to the expiration of a five year term. This language, when construed in Plaintiffs' favor, does not indicate that Presbyterian has control over ARAMARK with respect to ARAMARK's supervision and management of the Integrated Support Service.[3] The Court therefore concludes that Plaintiffs have raised a genuine factual issue and that Defendants are not entitled to summary judgment in their favor on Plaintiffs' civil conspiracy claims on the ground that ARAMARK is Presbyterian's agent.[4]

---

[3] Although other language in the contract could be construed as granting Presbyterian the right to control ARAMARK, for purposes of this summary judgment motion, the Court is required to construe the facts in the light most favorable to Plaintiffs.

[4] Because the Court has found that Plaintiffs have raised a factual question with respect to whether Presbyterian has a right to control ARAMARK, the Court need not determine whether

Defendant ARAMARK also moves for summary judgment on the conspiracy claims on the ground that Plaintiffs cannot establish the unlawful purpose or unlawful means element of a civil conspiracy. To establish liability for a civil conspiracy, Plaintiffs must demonstrate, among other things, that a combination of two or more persons conspired to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *MTS*, 937 F. Supp. at 1513-14. The existence of a conspiracy to accomplish an unlawful purpose or a lawful purpose by unlawful means must be shown by either specific direct evidence, or by circumstances from which a conclusion of the existence of a conspiracy may reasonably be inferred. *Las Luminarias v. Isengard*, 92 N.M. 297, 300, 587 P.2d 444, 447 (N.M. Ct. App. 1978). The question is whether the circumstances as a whole show that the parties united to accomplish the unlawful scheme. *Morris v. Dodge Country, Inc.*, 85 N.M. 491, 492, 513 P.2d 1273, 1274 (N.M. Ct. App. 1973).

Defendant ARAMARK maintains that there is no evidence that Presbyterian and ARAMARK engaged in any scheme with an unlawful purpose or a lawful purpose using unlawful means. The Court already has concluded, however, in the context of deciding Defendant ARAMARK's motion for summary judgment on the tortious interference claims, that Plaintiffs have presented evidence from which a reasonable juror could conclude that Defendant ARAMARK interfered with Plaintiffs' contractual employment relationship with Presbyterian in violation of the New Mexico Human Rights Act. These same facts likewise raise a question whether Defendant ARAMARK acted with an unlawful purpose thereby precluding summary

---

Plaintiffs have raised a factual question with respect to the other two indicia of an agency relationship, *i.e.*, whether ARAMARK holds a power to alter the legal relations between Presbyterian and third persons and whether ARAMARK is a fiduciary with respect to matters within the scope of its agency.

12

judgment on Plaintiffs' civil conspiracy claims.

III.  Punitive Damages.

Defendant ARAMARK moves for summary judgment on Plaintiffs' punitive damages claims on the ground that Plaintiffs cannot establish that Defendant ARAMARK's conduct rises to the level of willful, wanton, malicious, reckless, oppressive, or fraudulent conduct.  In response, Plaintiffs fail to go beyond the pleadings and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  Because Plaintiffs have not fulfilled their summary judgment burden, the Court grants Defendant ARAMARK's motion for summary judgment on Plaintiffs' punitive damages claims.

## CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that Defendant Presbyterian Healthcare Services, Inc.'s Motion for Summary Judgment on Conspiracy Claim (Count VIII of the Complaint), filed May 3, 2006 **[Doc. No. 112]**, and Defendant ARAMARK Management Services, L.P.'s ("ARAMARK") Motion for Summary Judgment, filed May 8, 2006 **[Doc. No. 117]**, are hereby DENIED in part and GRANTED in part as follows:

(1)  Defendant ARAMARK's motion for summary judgment on Plaintiffs' tortious interference with contract claims is DENIED;

(2)  Defendants Presbyterian's and ARAMARK's motions for summary judgement on Plaintiffs civil conspiracy claims is DENIED; and

(3)  Defendant ARAMARK's motion for summary judgment on Plaintiffs' punitive damages claims is GRANTED.

Dated this 10th day of August 2006.

                                                                            _____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE