# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TERRI P. ELISBERG, SHIRLEY GARCIA,
LINDA GIVENS, SCOTT COHERNOUR, MARY
MARTINEZ, FRANK PACHECO, PATRICIA
TROYANOWSKI, JOSEPH RUIZ, and DAVE
PACHECO,

            Plaintiffs,

vs.                                      No. 05-CV-461 JCH/KBM

PRESBYTERIAN HEALTHCARE SERVICES,
INC., and ARAMARK MANAGEMENT
SERVICES, L.P.,

            Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Presbyterian Healthcare Services,

Inc.'s ("Presbyterian") Motion for Summary Judgment on Breach of Express Employment

Contract, Breach of Implied Employment Contract and Breach of Implied Covenant of Good

Faith and Fair Dealing Claims (Counts II, III and IV of the Complaint), filed May 8, 2006 **[Doc.

No. 114]**.  The Court having considered the motion, briefs, and relevant law, and being otherwise

fully informed, finds that the motion is well taken in part and will be granted in part.

## STANDARD

Summary judgment generally is appropriate when a court determines that "'there is no

genuine dispute over a material fact and the moving party is entitled to judgment as a matter of

law.'" *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted).  Under

Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

    To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997).  "'Instead, the movant only bears the initial burden of 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim.  *See Pueblo v. Neighborhood Health Centers, Inc.*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzsche v. Albuquerque Municipal Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."  *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).  If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law.  *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

**DISCUSSION**

I.     Breach of Express Employment Contract.

Plaintiffs argue that Defendant Presbyterian's polices and procedures contained in its employee handbook created express contracts of employment between Defendant and Plaintiffs and that Defendant breached these contracts.  Defendant Presbyterian moves for summary judgment on the express contract claims, arguing that Plaintiffs' claims are precluded by the language in Plaintiffs' employment agreements indicating that the employee handbook does not constitute a contract or any part of a contract.

Plaintiffs have not raised any evidence demonstrating that the employee handbook constitutes a contract.  To the contrary, the employment agreements signed by each of the Plaintiffs provide that "the Employee Handbook does not constitute a contract or any part of a contract," that the policies in the handbook "are subject to change as situations warrant," and that "change in the policies may supersede, modify or eliminate policies."  Plaintiffs' breach of an express employment contract claims based upon violation of the handbook policies therefore must fail.  Accordingly, the Court grants Defendant Presbyterian's motion for summary judgment on Plaintiffs' express contract claims.

Plaintiffs' citation to *McGinnis v. Honeywell*, 110 N.M. 1, 791 P.2d 452 (N.M. 1990), does not persuade the Court otherwise.  In *McGinnis*, the New Mexico Supreme Court held that certain policies and procedures constituted part of an express employment contract.  *Id.* at 7, 791 P.2d at 458.  When McGinnis applied for employment at Honeywell, she executed an express employment agreement providing, "'My employment is in accordance with any applicable written agreement and applicable personnel practices published to employees, and, subject to such agreements or practices, may be terminated by me or by Honeywell at any time.'"  *Id.* at 2, 791

3

P.2d at 453.  During her employment, McGinnis became familiar with various personnel policies

and manuals, including a "work force realignment guide" setting out policies as to reductions in

force.  *Id.* at 3, 791 P.2d at 454.  The *McGinnis* court found that the work force realignment

guidelines constituted part of McGinnis's express employment contract, even though the

guidelines expressly indicated that "'the language is not intended to create a contract between

[Honeywell] and its employees.'"  *Id.* at 5, 7, 791 P.2d at 456, 458 (citation omitted).  The court

noted, "'[A] contractual disclaimer does not automatically negate a document's contractual status

and must be read by reference to the parties' norms of conduct and expectations founded upon

them.'"  *Id.* at 5, 791 P.2d at 456 (quoting *Zaccardi v. Zale Corp.*, 356 F.2d 1473, 1476-77 (10th

Cir. 1988)).  In finding an express contract, the court explained, "[McGinnis] signed an

employment agreement which, while it provided that her employment could be terminated 'at any

time,' also provided that a termination was subject to 'applicable personnel practices published to

employees.'"  *Id.* at 4, 791 F.2d at 455.  Therefore, "if applicable personnel practices permitted

her employment to be terminated only under certain conditions and in certain ways . . . and if

Honeywell terminated her in violation of those practices, then Honeywell breached an express

contract of employment."  *Id.*

Plaintiffs argue that under *McGinnis* the Court should find that the policies and

procedures in the employee handbook constituted part of an express employment contract

between Defendant Presbyterian and Plaintiffs.  The facts of this case, however, are

distinguishable from the facts of *McGinnis*.  In *McGinnis*, the employment contracts expressly

provided that the plaintiff's "termination was subject to 'applicable personnel practices published

to employees,'" and these "practices" presumably included the workforce realignment guidelines.

*Id.*  Here, the employment contracts expressly provide that the policies and procedures in the

employee handbook "do not constitute a contract or any part of a contract." Accordingly, Plaintiffs' citation to *McGinnis* does not persuade the Court that Defendant's motion for summary judgment should be denied.

II.   Breach of Implied Employment Contract.

Defendant Presbyterian also moves for summary judgment on Plaintiffs' breach of implied employment contract claims. Defendant maintains that no implied contract exists because the employment agreements indicate that the employee handbook shall not constitute a contract and that this express language forecloses an implied contract claim. Because the Court concludes that a question of material fact exists with respect to whether the policies and procedures in the employee handbook form an implied contract of employment, the Court denies Defendant Presbyterian's motion for summary judgment.

New Mexico courts "have recognized [an] exception[] to the at-will employment rule . . . 'where the facts disclose the existence of an implied employment contract provision that limits the employer's authority to discharge.'" *Trujillo v. Northern Rio Arriba Elec. Coop.*, 131 N.M. 607, 615, 41 P.3d 333, 341 (N.M. 2001) (quoting *Lopez v. Kline*, 124 N.M. 539, 953 P.2d 304 (N.M. Ct. App. 1997)). "A representation in an employee handbook or personnel policies may contractually modify the at-will presumption." *Id.* (citing *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 669, 857 P.2d 776, 780 (N.M. 1993); *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 426-27, 773 P.2d 1231, 1233-34 (N.M. 1989)) . "'An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon.'" *Garrity v. Overland Sheepskin Co.*, 121 N.M. 710, 714, 917 P.2d 1382, 1386 (N.M. 1996) (quoting *Hartbarger*, 115 N.M. at 672, 857 P.2d at 783). In order to evaluate whether an implied

5

contract of employment modifies an at-will relationship, courts rely upon a totality of the circumstances analysis. *Lopez*, 124 N.M. at 541, 953 P.2d at 306.  Whether an implied contract alters the at-will presumption associated with employment is generally considered a question of fact. *See, e.g.*, *Hartbarger*, 115 N.M. at 669, 857 P.2d at 780.  A court, however, may make a threshold inquiry whether a  party's expectations are reasonable. *Kiedrowski v. Citizens Bank*, 119 N.M. 572, 893 P.2d 468 (N.M. Ct. App. 1995) (expectations must satisfy a certain threshold level of objectivity).

Defendant Presbyterian maintains that the implied contract exception to the at-will employment rule is not applicable here.  According to Defendant, the policies and procedures set forth in the employee handbook cannot form the basis of an implied contract claim because Plaintiffs' employment contracts expressly provide that the handbook does not constitute a contract.  In support of this argument, Defendant cites *Garrity*, 121 N.M. at 714, 917 P.2d at 1386, in which the New Mexico Supreme Court held that an employee had no reasonable expectation that the terms of a personnel policy constituted an implied contract where the policy contained an express reservation of the right to terminate an employee for any reason.  Defendant Presbyterian likewise argues that because the employee agreements expressly provide that the employee handbook shall not constitute a contract, Plaintiffs could have no reasonable expectation that the employee handbook constituted an implied contract.

The Court concludes that this case is sufficiently distinguishable from *Garrity* to raise a factual question whether Plaintiffs reasonably could have believed that the policies and practices contained in the employee handbook were contractual in nature.  Although the *Garrity* court held that the plaintiff could have no reasonable expectation that the personnel policy constituted an implied contract, the personnel policy itself indicated that the employment was at will.  Here, the

6

evidence indicates only that the separately signed employee agreements, and not the handbook itself, provided that the handbook did not form part of the contract.  Furthermore, even if the handbook did contain such a limitation, it is unclear whether the disclaimer would be sufficiently clear to render an employee's expectation of job security and additional job protections unreasonable.  *Compare Jones v. Central Peninsula Gen. Hosp.*, 779 P.2d 783, 787-88 (Alaska 1989) (a handbook that "'clearly and conspicuously tells . . .  employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason'"  may not bind an employer to the statements contained in the handbook) (quoting *Leikvold v. Valley View Comm. Hosp.*, 141 Ariz. 544, 548, 688 P.2d 170, 174 (Ariz. 1984)).  The employee handbook contains hundreds of policies and presumably spans a significant number of pages.  The Court also notes that "'a contractual disclaimer does not automatically negate a document's contractual status and must be read by reference to the parties' norms of conduct and expectations founded upon them.'"  *McGinnis*, 110 N.M. at 5, 791 P.2d at 456 (quoting *Zaccardi*, 356 F.2d at 1476-77).  At this stage of the litigation, on the facts before the Court, the Court cannot say that Plaintiffs would be unreasonable for overlooking a one-sentence, general disclaimer contained in a separately-executed employee agreement, *cf. id.* ("one-sentence disclaimer followed by 85 pages of detailed text covering policies, rules, regulations, and definitions [did] not unambiguously and conspicuously inform the employee that the manual [wa]s not part of the employee's contract of employment"), in the face of hundreds of definite and specific policies and procedures outlined in the handbook.

The Court also notes that the one-sentence disclaimer in the employment agreement indicating that Presbyterian can terminate Plaintiffs' employment "in circumstances where PHS deems this appropriate" does not render Plaintiffs' expectation of an implied contract

unreasonable.  Not only is this language contained in the employment agreement (and not the employee handbook itself), but also the language leaves room for a reasonable employee to believe that the "appropriate" circumstances for termination will be consistent with the policies and procedures set forth in the employee handbook.  *Cf. Twibell v. Wackenhut Corrections Corp.*, No. F035647, 2001 Cal. App. LEXIS 463, at *14 (Cal. Ct. App. Dec. 24, 2001) (noting that "'the more clear, prominent, complete, consistent, and all-encompassing the disclaimer language set forth in handbooks, policy manuals, and memoranda disseminated to employees, the greater the likelihood that workers could not form any reasonable contrary understanding,'" but holding that the "at-will" language "providing employees could be terminated 'at the option of' the employer" was ambiguous) (quoting *Guz v. Bechtel National, Inc.*, 8 P.3d 1089, 1104 n.11 * 1109 (Cal. 2000)).

In addition, the Court notes that a reasonable jury could conclude on these facts that Defendant Presbyterian created an environment in which Plaintiffs reasonably could have believed that the policies and practices in the handbook were established and official, and that they were fairly, consistently, and uniformly applied.  Defendant Presbyterian concedes that its supervisors and employees are expected to comply with Presbyterian polices and that ARAMARK Management Services managers are expected to comply with its policies.  Defendant also concedes that a Presbyterian employee could be subjected to disciplinary action for violations of the policies and procedures, up to and including termination, and that through training and the efforts of the human resources department, Presbyterian communicates to its employees the expectation that employees will abide by Presbyterian's policies.  Defendant further concedes that the employee handbook is given to every new employee and that updated handbooks are provided to current employees, and that the purpose of providing updated handbooks is to inform

8

employees of the policies so that employees can follow the policies.  Defendant also agrees that it

seeks to ensure fair and consistent application of its policies with respect to the discipline of its

employees, and that it reviews its policies and procedures to ensure compliance when disciplinary

actions are taken.  Under these circumstances, where the handbook represents a definite, specific,

and explicit representation to employees of expected conduct, the Court concludes that a material

question of fact exists with respect to whether Plaintiffs' expectations that the employee

handbook constituted an implied contract were reasonable.[1]  Accordingly, the Court denies

Defendant Presbyterian's motion for summary judgment on Plaintiffs' breach of implied contract

claims.

III.    <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>.

        Defendant Presbyterian claims that pursuant to *Kropinak v. ARA Health Services, Inc.*,

131 N.M. 128, 33 P.3d 679 (N.M. Ct. App. 2001), the Court must grant summary judgment in

Defendant's favor as a matter of law.  The *Kropinak* court held that "when parties have entered

into a clear and unambiguous at-will employment agreement, it is improper to invoke the implied

covenant of good faith and fair dealing to vary the at-will termination provision in the written

---

        [1] In *Toussaint v. Blue Cross & Blue Shield of Michigan*, 292 N.W.2d 880, 885 (Mich. 1980), a leading case on the enforceability of provisions contained in employee manuals, the Supreme Court of Michigan explained as follows:

        While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced.  The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. . . . [T]he employer chooses . . . to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee.  The employer has then created a situation "instinct with an obligation."

agreement." *Id.* at 131, 33 P.3d at 682; *see also Melnick v. State Farm Mut. Auto. Ins.*, 106

N.M. 726, 731, 749 P.2d 1105, 1110 (N.M. 1988).  According to Defendant Presbyterian, the

language in the employment agreements expressly and unambiguously establishes an at-will

employment relationship.  The employment agreements, however, only provide that Plaintiffs'

"employment may be terminated in circumstances where PHS deems this appropriate."  This

language does not clearly and unambiguously establish an at-will employment relationship.

Rather, the use of the word "appropriate" indicates that Defendant Presbyterian will terminate its

employees only for "appropriate" circumstances, which, for example, could be construed as the

circumstances set forth in the policies and procedures of the employee handbook.  Because the

employment agreements do not clearly and unambiguously establish an at-will employment

relationship, the Court denies Defendant Presbyterian's motion for summary judgment on

Plaintiffs' breach of the implied covenant of good faith and fair dealing claims.

## CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that Defendant

Presbyterian Healthcare Services, Inc.'s Motion for Summary Judgment on Breach of Express

Employment Contract, Breach of Implied Employment Contract and Breach of Implied Covenant

of Good Faith and Fair Dealing Claims (Counts II, III and IV of the Complaint), filed May 8,

2006 **[Doc. No. 114]**, is hereby GRANTED IN PART as follows:

(1)     The Court grants summary judgment in Defendant Presbyterian's favor on

Plaintiffs' breach of express employment contract claims;

(2)     The Court denies summary judgment in Defendant Presbyterian's favor on

Plaintiffs' breach of implied employment contract claims; and

(3)     The Court denies summary judgment in Defendant Presbyterian's favor on

Plaintiffs' breach of the implied covenant of good faith and fair dealing claims.


Dated this 10th day of August 2006.


_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE